IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUSSELL TENORIO,

    Plaintiff,

vs.                                           Civ. No. 12-01295 MCA/KBM
                                                    Consolidated with
                                                  Civ. No. 13-00574 MCA/KBM

BRIAN PITZER,
RAYMOND D. SCHULTZ, and
THE CITY OF ALBUQUERQUE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This case is before the Court upon Defendant City of Albuquerque's *Motion for Summary Judgment* [Doc. 158]. The Court has considered the written submissions of the parties, the record in this case and the applicable law, and is otherwise fully advised.

**Summary Judgment Standards**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim . . . on which summary judgment is sought." As our Court of Appeals has succinctly stated:

> Summary judgment is appropriate only if there is no genuine issue as to any material fact and . . .the moving party is entitled to a judgment as a matter of law. A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

**Procedural Posture**

This case was consolidated with a related case, Civ. No. 13-00574 MCA/KMB. As of the date of this *Memorandum Opinion and Order* all claims against all Defendants in these consolidated cases have been dismissed with the exception Count I (against Defendant Pitzer) and Count II (against Defendant City of Albuquerque) in Civ. No. 12-1295. The Court previously determined that Plaintiff has come forward with evidence that would permit a reasonable jury to find in Plaintiff's favor as to Plaintiff's claim that Officer Pitzer subjected Plaintiff to constitutionally unreasonable force, under two alternative theories (Count I). [Doc. 121] Plaintiff's municipal liability claim against the City (Count II) is the subject of the instant motion.

**Background**

The evidence on which the Court relied in denying Defendant Pitzer qualified immunity is summarized in the Court's May 28, 2014, *Memorandum Opinion and Order* [Doc. 121 at 3-6] and will not be repeated. The sufficiency of that evidence to establish genuine issues of material fact as to the unreasonableness of Officer Pitzer's use of deadly force is the law of the case. *Tenorio v. Pitzer*, 802 F.3d 1160 (10th Cir. 2015) (upholding denial of summary judgment on qualified immunity).

In September 2010, the City commissioned the Police Executive Research Forum (PERF) to conduct an examination of "the conditions that may be associated with what seems to be a high rate of police-suspect encounters that involve the use of force by Albuquerque police officers." PERF issued its report on June 23, 2011. PERF concluded that "although officer-involved shootings recently have increased, both violent crimes and

assaults on officers have been on a downward trend." PERF noted that despite various measures taken by the Albuquerque Police Department (APD), "the recent spate of officer-involved shooting events continues."

On July 19, 2016, the Court ruled that, pursuant to Fed. Evid. Rule 803(8), a report prepared by the United States Department of Justice (DOJ), Civil Rights Division, is admissible for purposes of Fed. R. Civ. P. 56(c)(1). [Doc. 155 at 2] The DOJ report[1] includes the following findings:

1. Longstanding deficiencies have allowed a culture of indifference to constitutional policing to develop within APD.
2. APD officers too often use deadly force in an unconstitutional manner in their use of firearms.
3. APD officers often use deadly force in circumstances where there is no imminent threat of death or serious bodily harm to officers or others.
4. Officers use deadly force against people who pose a minimal threat, including individuals who pose a threat only to themselves.
5. Officers also use deadly force in situations where the conduct of the officers heightens the danger and contributes to the need to use force.
6. APD's policies, training, and supervision are insufficient to ensure that officers encountering people with mental illness or in distress do so in a manner that respects their rights and is safe for all involved.
7. The use of excessive force by APD officers is not isolated or sporadic.
8. The pattern or practice of excessive force stems from systemic deficiencies in oversight, training, and policy.
9. De-escalation techniques employed by Crisis Intervention Team ("CIT") officers are too easily dismissed by heavily-armed tactical

---

[1] The complete DOJ report is attached as an exhibit to the *Complaint* in *United States of America v. City of Albuquerque*, Civ. No. 14-1025 RCB/SMV [Doc. 1-1].

10. units in situations where individuals under police scrutiny are not posing an immediate threat of harm.
11. APD's policies, training, and supervision are insufficient to ensure that officers encountering people with mental illness or in distress do so in a manner that is safe and respects their rights.
12. Within APD, problematic behavior continues to be viewed as reasonable, even exemplary.
13. APD has failed to abide by fundamental policing values.
14. Systemic deficiencies include a broken system of internal accountability; inadequate training on use of force, community policing, and constitutional policing; an aggressive culture that undervalues civilian safety and discounts the importance of crisis intervention; and insufficient leadership on tactical operations, community policing, and the importance of accountability to external oversight.
15. Superficial reviews of use of force reports evince the chain of command's disregard for detecting individual and aggregate patterns of unreasonable force by subordinates. There is a failure to identify and address officers who need correction.
16. The training provided by APD over-emphasizes the use of force, especially weapons, to resolve stressful encounters, with insufficient emphasis on de-escalation techniques.
17. Much of APD's training leads officers to believe that violent outcomes are normal and desirable.
18. APD officers receive only a few hours of training on constitutional standards.
19. Legal training manuals include cartoons that are unprofessional and offensive and send the wrong message to officers about the importance of civilians' legal rights.
20. The way officers have communicated, or failed to communicate, with individuals in mental health crisis shows a clear lack of appropriate training on mental illness.
21. Many APD officers are not familiar with the CIT's function or relevance to their encounters with subjects in mental health crisis.
22. In some instances, officers encountered a person who was clearly in mental health crisis, but they made no attempt to contact the CIT or patrol officers in their area who had been trained and certified by the CIT.

22. Far too many encounters that began as welfare checks end in violence, and far too often the officers' use of force is unreasonable.

**Discussion**

Section 1983 does not subject municipalities to vicarious liability. *Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). For the City to be held liable, Plaintiff must establish (1) an official policy, custom, or practice concerning the use of force; (2) deliberate indifference on the part of APD policymakers to the risk that the policy, custom, or practice will result in the use of unreasonable force against persons with whom APD officers come into contact; and (3) a direct causal link between the policy or custom and the constitutionally unreasonable use of force against the Plaintiff. *See Schneider v. City of Grand Junction*, 717 F.3d 760, 769-71 (10th Cir. 2013) (discussing elements of a *Monell* municipal liability claim).

The Court does not understand Plaintiff to be challenging APD's written use-of-force policies. [Doc. 97-12] Rather, the Court understands Plaintiff to be proceeding on the theory that APD engages in well-established use-of-force *practices*, including practices relating to training and supervision, which have resulted in numerous incidents involving constitutionally unreasonable use of deadly force. *Schneider*, 717 F.3d at 770 (observing that first element of *Monell* claim may be satisfied by proof of "a formally promulgated policy, *a well-settled custom or practice*, a final decision by a municipal policy maker, or *deliberately indifferent training or supervision*") (emphasis added). Of particular relevance to the present case are the DOJ's findings that (1) APD officers use deadly force in circumstances where there is no imminent threat of death or serous bodily

harm to officers or others; (2) APD officers use deadly force against people who pose a threat only to themselves; (3) APD officers use deadly force in situations where their own conduct creates the need to resort to deadly force; (4) APD officers are not adequately trained to deal with people in emotional crisis; (5) APD officers do not utilize CIT officers to de-escalate encounters; and (6) APD training over-emphasizes the use of force, especially weapons, to resolve stressful encounters.  This evidence would permit a reasonable jury to find that APD engages in a pattern or practice of constitutionally unreasonable use of deadly force.

The Court concludes that the DOJ's findings that the deficiencies in APD's use-of-force practices are longstanding and systemic would permit a jury to find that APD's chain of command has been aware of, but has consciously disregarded, a substantial risk that its use-of-force practices are resulting in violations of the Fourth Amendment's limits on the use of deadly force:

> [T]he need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious" that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.  It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policy makers, who, nevertheless, are "deliberately indifferent" to the need.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989).

The Court concluded in its May 28, 2014, *Memorandum Opinion and Order* that a reasonable jury could find either that (1) Officer Pitzer resorted to deadly force under circumstances that would not have led a reasonable officer to believe that Plaintiff presented a threat of serious physical injury to officers or civilians, or (2) even if Officer

Pitzer had reasonable grounds to believe that Plaintiff presented a risk of serious physical injury to others at the moment he shot Plaintiff, the tactics employed by Officer Pitzer and his fellow APD officers unreasonably created the circumstances precipitating Officer Pitzer's resort to deadly force. [Doc. 121 at 7-11] Causation in this context requires the factfinder to decide whether Officer Pitzer's allegedly unreasonable use of deadly force would have been avoided had the responding officers been trained and supervised under a "program that was not deficient in [the] identified respect[s]." *Harris*, 489 U.S. at 392. This is a matter of comparing what actually occurred in Plaintiff's case with how hypothetical well-trained officers would have acted. *Id.* The Supreme Court has expressed confidence that "judge and jury, doing their respective jobs, will be adequate to the task." *Id.*

A jury could find that many of the deficiencies in APD's use-of-force practices identified by the DOJ were implicated in Plaintiff's case, allowing a jury to find that "the identified deficienc[ies] in a city's training program [were] closely related to the ultimate injury." *Harris*, 489 U.S. at 391. To find causation, the jury will compare the actions of Officer Pitzer and his colleagues with the actions of hypothetical APD officers who are trained (1) to use deadly force only in circumstances where they reasonably perceive an imminent threat of death or serous bodily harm to themselves or others; (2) to refrain from using deadly force against people who pose a threat only to themselves; (3) to avoid unreasonably creating situations where resort to deadly force is necessary; (4) to deal with people in emotional crisis; (5) to utilize CIT officers to de-escalate encounters; and (6) to consider alternatives to the use of force, especially weapons, to resolve stressful

encounters. The Court concludes that on the evidence of record, a reasonable jury could find that Plaintiff would not have been shot but for the longstanding and systemic deficiencies in training and supervision identified by the DOJ, and that those deficiencies were a "moving force" in Officer Pitzer's use of deadly force against Plaintiff. *Schneider*, 717 F.3d at 770 (internal quotation marks and citation omitted).

**Conclusion**

The Court finds that the evidence of record establishes genuine issues of material fact as to each element of Plaintiff's municipal liability claim (Count II).

**WHEREFORE, IT HEREBY IS ORDERED** that Defendant City of Albuquerque's *Motion for Summary Judgment* [Doc. 158] is **DENIED**.

**So ordered this 25th day of September, 2017.**

_____
**M. CHRISTINA ARMIJO
Chief United States District Judge**