# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**RUSSELL TENORIO,**

    **Plaintiff,**

v.                                                     **No. Civ. 12-01295 JCH-KBM**
                                                       **Consolidated with**
                                                       **No. Civ. 13-00574 JCH-KBM**

**BRIAN PITZER,**
**and THE CITY OF ALBUQUERQUE,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on (i) Defendant Brian Pitzer's Motion to Reconsider, and Memorandum in Support (ECF No. 185); (ii) Defendants' Motion for Separate Trials and Memorandum in Support (ECF No. 170); and (iii) Defendants' Daubert Motion, and Memorandum in Support, Requesting to Exclude Testimony of Plaintiff's Expert Roger A. Clark (ECF No. 171). The Court, having considered the motions, briefs, applicable law, and otherwise being fully advised, concludes that Defendant's Motion to Reconsider should be denied; Defendants' motion for separate trials should be denied as to the request for two separate trials, but bifurcation of one trial into two phases before the same jury should be granted; and Defendants' motion to exclude the testimony of Mr. Clark should be granted in part and denied in part as described herein.

    **I.**     **FACTUAL BACKGROUND**

The facts necessary to resolve the pending motion to reconsider are those set forth in the Court's Memorandum Opinion and Order denying summary judgment to Defendant Pitzer, which are either undisputed or construed in the light most favorable to Plaintiff as the non-movant. *See* Mem. Op. and Order 2-6. The Tenth Circuit relied on the operative facts from the

Court's opinion. *See Tenorio*, 802 F.3d at 1161-63. The Court need not repeat those facts herein but adopts them by reference for the purposes of resolving the motion to reconsider.

## II. PROCEDURAL HISTORY

Plaintiff filed suit against Defendants Brian Pitzer and the City of Albuquerque ("the City") asserting claims arising from events that occurred on November 11, 2010, in which Albuquerque Police Officer Pitzer shot Russell Tenorio when responding to an emergency call. The case was consolidated with the related case of *Russell Tenorio v. Andrea Ortiz*, CIV 13-574. *See* Order, ECF No. 96. On June 14, 2016, the parties stipulated to the dismissal of all claims asserted against Defendants Robert Liccione, Raymond Schultz, and Andrea Ortiz. *See* Stipulated Dismissal, ECF No. 154. The claims that remain in the consolidated cases are an excessive force claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment against Defendant Pitzer (Count I) and a municipal liability claim under 42 U.S.C. § 1983 against the City (Count II) in No. 12-cv-1295. *See* Mem. Op. and Order 2, ECF No. 178.

As to Count I, the Court entered a Memorandum Opinion and Order (ECF No. 121) in this case denying Defendant Pitzer's motion for summary judgment based on qualified immunity. The Court concluded that there was evidence that Defendant Pitzer violated clearly established law under two theories: (1) that he lacked probable cause to believe Russell Tenorio presented a threat of serious physical harm to another person, and (2) that he and his fellow officers recklessly created the situation resulting in the need to use deadly force. *See* Mem. Op. and Order 8-15, ECF No. 121. Defendant Pitzer appealed the Court's decision, and in a 2-1 opinion, the Tenth Circuit "affirm[ed] the denial of summary judgment because the evidence would support a violation of clearly established law under the first theory." *Tenorio v. Pitzer*, 802 F.3d 1160, 1161 (10th Cir. 2015). The Tenth Circuit declined to consider the second theory.

*Id.* Defendant Pitzer filed a petition for writ of certiorari that the Supreme Court denied. *See* Order, ECF No. 151.

Following remand, the City filed a motion for summary judgment (ECF No. 158) requesting dismissal of all claims against it. Defendants also filed a motion to bifurcate (ECF No. 170) and a motion to exclude Plaintiff's expert Roger A. Clark (ECF No. 171), the latter two of which are currently pending and the subject of this Memorandum Opinion and Order. On September 25, 2017, the Court entered a Memorandum Opinion and Order (ECF No. 178) denying the City's motion for summary judgment.

On January 12, 2018, this case was reassigned to the undersigned judge. On April 16, 2018, Defendant Pitzer filed a Motion to Reconsider (ECF No. 185), moving the Court to reconsider the Honorable M. Christina Armijo's Memorandum Opinion and Order (ECF No. 121) that denied Defendant Pitzer qualified immunity in light of the United States Supreme Court's decision in *Kisela v. Hughes*, 584 U.S. __, 138 S.Ct. 1148 (2018), issued on April 2, 2018. The Court will first consider the pending motion to reconsider.

### III. MOTION TO RECONSIDER

An order denying summary judgment is interlocutory. The Court has broad discretion to reconsider its interlocutory orders prior to entry of judgment. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). "Notwithstanding the district court's broad discretion to alter its

3

interlocutory orders, the motion to reconsider is not at the disposal of parties who want to rehash old arguments." *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F.Supp.2d 1250, 1256 (D. Colo. 2000) (internal quotations omitted). A court should deny a motion to reconsider unless the party clearly demonstrates manifest error of law or fact or presents newly discovered evidence. *Id.*

Defendant Pitzer argues that *Kisela v. Hughes* represents an intervening change in controlling law that requires this Court to consider the Tenth Circuit's decision erroneous. Defendant Pitzer contends that the facts of *Kisela* are similar to this case, and argues that this case is subject to the Supreme Court's holding. In *Kisela*, the Supreme Court held that Officer Kisela did not clearly violate the Fourth Amendment when he shot a suspect who presented a threat to another as she held a knife to her side about six feet away from a bystander, and where she was given two commands to drop the knife, both of which she failed to acknowledge. *See Kisela*, 138 S.Ct. 1151-52.

The Supreme Court expressly stated in *Kisela* that it did not decide whether the officer violated the Fourth Amendment. *Kisela*, 138 S.Ct. at 1152. Instead, the Supreme Court assumed a Fourth Amendment violation occurred and held that, based on the facts, it was not clearly established that the officer's use of deadly force violated the Fourth Amendment. *See id.* After discussing the importance of specificity in the Fourth Amendment qualified immunity context, the Supreme Court examined the specific facts in the case before it:

> Kisela says he shot Hughes because, although the officers themselves were in no apparent danger, he believed she was a threat to Chadwick. Kisela had mere seconds to assess the potential danger to Chadwick. He was confronted with a woman who had just been seen hacking a tree with a large kitchen knife and whose behavior was erratic enough to cause a concerned bystander to call 911 and then flag down Kisela and Garcia. Kisela was separated from Hughes and Chadwick by a chain-link fence; Hughes had moved to within a few feet of Chadwick; and she failed to acknowledge at least two commands to drop the

> knife. Those commands were loud enough that Chadwick, who was standing next to Hughes, heard them. This is far from an obvious case in which any competent officer would have known that shooting Hughes to protect Chadwick would violate the Fourth Amendment.

*Id.* at 1153.

The Supreme Court did not end its analysis there. Instead, the Supreme Court examined the Ninth Circuit's analysis of its own precedent, determining that the Court of Appeals erred in concluding that its precedent clearly established that the officer used excessive force. *See id.* The Supreme Court stated: "To begin with, 'even if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here.'" *Id.* (quoting *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1776 (2015)). It explained that the most on-point Ninth Circuit precedent actually favored the officer, and the other decisions relied on by the Court of Appeals were not sufficiently analogous to govern the officer under the circumstances he faced. *See id.* at 1153-54.

Significantly, this case is not before the Court on a blank slate. The Tenth Circuit has already affirmed the Court's decision. It did so by relying on Tenth Circuit precedent. On appeal of this case, the Tenth Circuit relied on the case of *Zuchel v. City & County of Denver*, 997 F.2d 730 (10th Cir. 1993), as construed in *Walker v. City of Orem*, 451 F.3d 1139, 1160 (10th Cir. 2006). *See Tenorio*, 802 F.3d at 1165. The Tenth Circuit explained with specificity how *Zuchel* was a factually similar case to this one, in which officers reasonably believed the suspect had a knife, the suspect had been told to drop it, but officers shot him when he took steps toward an officer who was six to fifteen feet away, even though he made no aggressive move toward any of the officers. *See Tenorio*, 802 F.3d at 1165-66 (construing *Zuchel*, 997 F.2d at 735-37). The Tenth Circuit in *Zuchel* held that the evidence was sufficient for the jury to find that the use of deadly force was not objectively reasonable. *See id.* (citing *Zuchel*, 997 F.2d at 736).

5

Accordingly, unlike in the Ninth Circuit, Tenth Circuit case law in *Zuchel* "specifically established that where an officer had reason to believe that a suspect was only holding a knife, not a gun, and the suspect was not charging the officer and had made no slicing or stabbing motions toward him, that it was unreasonable for the officer to use deadly force against the suspect." *Tenorio*, 802 F.3d at 1165-66 (quoting *Walker*, 451 F.3d at 1160).

The Supreme Court in *Kisela* did not decide that the officer acted constitutionally. Had it done so, the Court's analysis herein might be different. Instead, the Supreme Court held that it was not clearly established by Supreme Court or Ninth Circuit precedent that the officer's actions were unconstitutional. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court *or Tenth Circuit decision on point*, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Becker v. Bateman*, 709 F.3d 1019, 1023 (10th Cir. 2013) (quoting *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (italics added). The Supreme Court's analysis in *Kisela* that Supreme Court and Ninth Circuit precedent was not sufficiently clear to render the officer's actions a clear violation of law does not compel the same result in this circuit, because it did not analyze the clearly established law in the Tenth Circuit.

In this case on appeal, the Tenth Circuit held that, under the facts as construed in Plaintiff's favor that were before the district court, it was clearly established that Defendant Pitzer violated the Fourth Amendment. It did so by examining a case with similar facts, not by relying on a case stating law of general applicability. The cases upon which it relied predated the events at issue here. *Kisela* thus did not effectively overrule *Tenorio* or amount to an intervening change in controlling law. This Court therefore continues to be bound by the Tenth Circuit

decision in *Tenorio v. Pitzer*, 802 F.3d 1160, and will deny Defendant Pitzer's motion for reconsideration.

## IV.    MOTION FOR SEPARATE TRIALS

Defendants have moved to bifurcate the trial of Plaintiff's municipal liability claim against the City from the trial of Plaintiff's excessive force claim against Defendant Pitzer. Defendants argue two trials will be more economical because the municipal liability claim is dependent upon whether liability is first assessed against Defendant Pitzer, so if a jury finds for Defendant Pitzer, there is no need to present evidence on the municipal liability claim. Defendants anticipate Plaintiff will attempt to prove his municipal liability claim through the introduction of evidence of internal affairs complaints against and investigations of Defendant Pitzer, as well as portions of the April 10, 2014 letter from the United States Department of Justice ("DOJ letter") regarding the Albuquerque Police Department's policies and practices regarding the use of force. Defendants argue this evidence is not relevant under the Fourth Amendment's objective standard to determine whether Defendant Pitzer used excessive force during the incident in question and would cause him unfair prejudice.

Plaintiff asserts that Defendants' concerns can be mitigated by introducing limiting instructions at appropriate times during one trial, or by empaneling one jury and trying the case in two phases. Plaintiff contends his claim against Defendant Pitzer is inseparable from the culture in which he operated.

This Court has discretion to grant separate trials under Federal Rule of Civil Procedure 42(b) upon consideration of the need to prevent delay and prejudice and promote convenience, expedition, and economy. In the present case, completely separate trials will not prevent delay and will not be conducive to convenience or economy of the Court. Bifurcation of counts into

7

phases, however, will streamline the presentation of evidence as to the excessive force claim, and potentially render superfluous the introduction of evidence as to municipal liability, should the jury not find for Plaintiff in the first phase. Moreover, the Court finds that evidence relevant to the municipal liability claim but not relevant to the excessive force claim could cause unfair prejudice to Defendant Pitzer when the jury is considering whether his use of force on the date in question was unreasonable. Bifurcation will produce a fairer trial for both parties because "it will eliminate the significant problem of unfair prejudice resulting from introducing evidence admissible on one claim yet totally inadmissible on all others," while preventing the possibility of evidence otherwise admissible on the municipal liability claim "from being excluded under a 403 analysis because of potential prejudice to the other claims." *Barr v. City of Albuquerque*, 12-cv-1109-GBW-RHS, Order 3 (ECF No. 262) (filed Oct. 16, 2014) (bifurcating battery and excessive force claims against officer from negligent supervision claim against city).

Accordingly, the Court will deny Defendants' request for separate trials, but will bifurcate one trial into two phases before the same jury. In the first portion, the jury will consider evidence relevant to whether Defendant Pitzer used excessive force. Evidence pertaining to the municipal liability claim against the City will be presented in the second phase, should it be necessary.

V.  **MOTION TO EXCLUDE**

Plaintiff has retained Roger A. Clark, a 27-year veteran of the Los Angeles County Sheriff's Department, to render expert opinions in this case on police procedures and training regarding use of force. Clark Report 12, ECF No. 171-1. Defendants argue that Mr. Clark's opinions should be excluded because he lacks the expertise in dealing with the mentally ill and trajectory analysis. Additionally, Defendants assert that his opinions are flawed because they are

based in part on legal conclusions, flawed assumptions, and/or unreliable information.

### A. STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. A witness, qualified by knowledge, skill, experience, training, or education, may offer an opinion so long as the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. Fed. R. Evid. 702, 2000 Amendments. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. Trial courts have equally broad discretion in both determining the reliability and admissibility of expert testimony and in

deciding how to assess an expert's reliability, including what procedures to use in making that assessment. *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000). So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See United States v. Nacchio*, 555 F.3d 1234, 1241, 1251 (10th Cir. 2009).[1]

## B. ANALYSIS

As an initial matter, the Court finds based on the record before it that Mr. Clark has extensive training, experience, and specialized knowledge in the field of law enforcement tactics, practices, and procedures on the use of force. *See* Clark Report 13-16, ECF No. 171-1. The Court will therefore turn to the specific objections by Defendants to Mr. Clark's testimony.

### 1. Mental illness opinion

Mr. Clark opined in his report that law enforcement officers are trained on methods and means for responding to "calls for assistance with mentally ill subjects." Clark Report 11, ECF No. 171-1. He explained that none of the officers on scene "followed the expected and required tactical protocols necessary for dealing with a mentally impaired, suicidal and possibly armed (with a knife) subject." *Id.* at 5. Mr. Clark explained his review of the New Mexico Peace Officer Standards and Training ("POST") material regarding mentally ill and/or mentally impaired persons and what the acceptable and trained tactical response should have been when dealing with Mr. Tenorio. *See id.* at 7-10. He opined that Mr. Tenorio was a mentally disturbed man who

---

[1] The evidence in the record is sufficient to enable the Court to perform its gatekeeping duty. Because it is a party's burden to request an evidentiary hearing, and none was requested, the Court will rule on the motion based on the briefs and evidence in the record. *See United States v. Nacchio*, 555 F.3d 1234, 1253-56 (10th Cir. 2009) (explaining burden is on proponent of expert to request *Daubert* hearing).

had only threatened himself and officers should have followed the required tactics to include meaningful de-escalation. *Id.* at 8.

Defendants contend that there is no evidence that Mr. Tenorio was diagnosed with a mental illness, and Mr. Clark does not have expertise dealing with "mentally ill subjects" and cannot render an opinion on whether someone is mentally ill. Plaintiff responds that Mr. Clark did not diagnose Plaintiff as mentally ill, but is referring to methods and procedures to be used in responding to subjects who are or appear mentally ill or in crisis.

Mr. Clark does not have expertise to render an opinion on whether Mr. Tenorio was in fact mentally ill, which Plaintiff admits. As Plaintiff points out, however, he has training on patrol tactics, investigation, apprehension methods and procedures, investigations into use-of-force and officer-involved shootings, and reasonable or unreasonable use of force and tactics. *See* Clark Report 12-13, ECF No. 171-1. Based on the record, Mr. Clark has specialized knowledge and experience to opine about tactics available to law enforcement officers in situations in which police officers are engaging with a subject exhibiting signs of mental illness or being in crisis. A police officer does not have to be an expert and able to diagnose a mental illness for him or her to conclude that law enforcement policies and training for dealing with a situation in which they suspect mental illness or a person in mental health crisis may apply to the scene at hand. *See*, *e.g.*, APD Procedural Order 2-13, ECF No. 97-11 ("Department policy is to provide an effective response to situations involving subjects who are suspected and/or verifiably mental ill, and/or people in crisis in order to avoid unnecessary violence….").

The facts in the case show that officers were told that a man is drunk, he has a knife to his own throat, he has vandalized windows and been violent in the past, and he takes meds for seizures. *See* Mem. Op. and Order 3, ECF No. 121. A jury could find from these facts that police

11

officers at the scene should have understood Mr. Tenorio was a person in a mental health crisis when determining the reasonableness of Officer Pitzer's actions. The Court will therefore not exclude Mr. Clark's opinions on police tactics and training based on the argument that Mr. Clark cannot diagnose a mental illness. *Cf. LeBlanc v. City of Los Angeles*, No. CV 04-8250 SVW (VBKx), 2006 WL 4752614, at *10 (C.D. Cal. Aug. 16, 2006) (permitting Roger Clark to describe suspect as "delusional, impaired, distraught, or any other adjective that a lay person would use to describe" suspect, even though he is not a medical expert, because the relevant issue was whether officer should have followed certain tactics when dealing with a suspect who appeared delusional to them).

### 2. Trajectory analysis

Defendants next contend that Mr. Clark makes statements concerning the trajectory path of the bullet, but he has no training and expertise to offer such opinions. In his report, Mr. Clark stated:

> The trajectory of the bullet was later found to be front to back, just below the left rib cage. The bullet pierced Mr. Tenorio, and lodged in the wall next to the kitchen doorway. It appears that the trajectory was a straight line from Officer Pitzer's hand that held the gun to the wall where the bullet fragment lodged. The trajectory of the bullet and the statements of the officers that they could not see a knife, indicates Mr. Tenorio would have been carrying the knife below his waist, and not in a threatening manner.

Clark Report 6, ECF No. 171-1. Plaintiff asserts that Mr. Clark is not opining regarding the trajectory of the bullet, but merely restating what the investigation found concerning from where the bullet was fired. Plaintiff argues that he "is not offering Mr. Clark as an expert concerning trajectory of the bullet, and Mr. Clark's statement was not offered as an opinion on the bullet's trajectory." Pl.'s Resp. 8, ECF No. 173. Given that Plaintiff has acknowledged that Mr. Clark does not have expertise on bullet trajectory analysis, the Court will exclude Mr. Clark from

offering any opinions drawing conclusions from the bullet trajectory information in the investigation.

### 3. Less-lethal options opinion

In his report, Mr. Clark opines: "Officer Pitzer knew that he had other officers who were armed with less-lethal options. However, in lieu of pursuing those various less-than-lethal options Officer Pitzer used the most lethal force available….[, which] can only be interpreted as w[a]nton disregard for the life and safety of Mr. Tenorio…." Clark Report 11, ECF No. 171-1. Defendants argue that the law does not require police use the least intrusive means, only reasonable ones, so Mr. Clark's opinion is flawed. Defendants additionally assert that opining that Officer Pizter's use of lethal force showed a "w[a]nton disregard" for Mr. Tenorio impermissibly states a legal conclusion and usurps the jury's role as factfinder.

Plaintiff acknowledges that the Fourth Amendment does not require an officer to use the least intrusive means so long as his actions are reasonable under the circumstances. Indeed, it is well established that the reasonableness standard under the Fourth Amendment does not require officers to use alternative less intrusive means. *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001). The Tenth Circuit has cautioned against considering lesser means of force and evaluating the officer's actions with the benefit of 20/20 hindsight instead of from the perspective of the officer making a split second judgment on the scene. *Id.* "Similarly, violations of state law and police procedure generally do not give rise to a 1983 claim for excessive force.'" *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (internal quotations omitted). Both these principles stem from evaluating the actions of a police offer by that of a reasonable officer on the scene who may be forced to make split-second judgments in difficult circumstances. *Id.*

In light of controlling Tenth Circuit law, the Court will exclude Mr. Clark's opinion that "Officer Pitzer's apparent reliance on the most lethal option in a situation where less-lethal force was appropriate and mandated, can only be interpreted as w[a]nton disregard for the life and safety of Mr. Tenorio." The reference to less-lethal force being mandatory may confuse the jury where the Fourth Amendment does not require officers to use the least intrusive means, just reasonable ones. *Marquez*, 399 F.3d at 1222. Moreover, it would not be proper for Mr. Clark to render an opinion that Defendant Pitzer's actions were unreasonable where it is based on the concept that only the minimum amount of force necessary is reasonable force. *Cf. Reindl v. City of Leavenworth, Kansas*, No. 04-2584-RDR, 2006 WL 2631947, at *4 (D. Kan. Sept. 13, 2006) (noting that opinion that use of baton by officer was not reasonable use of force would be inadmissible "if it is based on the concept that only the minimum amount of force necessary is reasonable force for purposes of § 1983 or that a violation of professional standards is *ipso facto* a violation of § 1983").

Plaintiff nevertheless contends that Mr. Clark should be able to testify that three of the officers at the scene had less lethal options, and give opinions based on his experience that the officers could have overpowered Mr. Tenorio without the need to shoot him. Plaintiff additionally states, "Accordingly, Mr. Clark does not thereby opine that Defendant Pitzer's use of lethal force was unreasonable." Pl.'s Resp. 10, ECF No. 173. A question of fact for the jury in this case is whether Mr. Tenorio was threatening the use of deadly force at the time Officer Pitzer shot him. That two other officers had less-lethal options available in the room is relevant to the totality of the circumstances analysis concerning the situation faced by Officer Pitzer and the reasonableness of his actions. It is also permissible for an expert to testify concerning what tools and tactics reasonable officers have available to them when faced with a situation like the

14

one here and the abilities and limitations of the respective tactics and tools, such as the Taser and bean-bag gun. *See Zuchel v. City and County of Denver*, 997 F.2d 730, 742 (10th Cir. 1993) (stating that courts generally allow experts in police training, tactics, and use of deadly force to state opinions on whether conduct at issue fell below accepted standards in field of law enforcement); *Barr v. City of Albuquerque*, No. 12-CV-01109-GBW/RHS, Order on Motions Relating to Expert Testimony 5, (filed Oct. 23, 2014), ECF No. 272 ("General testimony about tactics which are available to officers in these situations and of which reasonable officers ought to be aware is admissible. This would include testimony about methods used to approach subjects, de-escalation techniques and other 'CIT' techniques known to officers, and the availability of cover to Officer Kelly."). Plaintiff, however, must take care that Mr. Clark does not cross the line into unacceptable territory in the first phase of the trial and opine that Officer Pitzer violated standard operating *procedures*, so as not to confuse the jury on the relevant constitutional standard. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005) ("Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard."). In the first phase of the trial, the Court will therefore only permit the more limited opinions by Mr. Clark as to the availability of less lethal options and tactics and that the less lethal options offered the ability to overpower Mr. Tenorio, without opining that such less lethal options were required.

Plaintiff additionally contends that Mr. Clark should be able to express an opinion that Defendant Pitzer showed disregard for Mr. Tenorio's life and safety if it is couched in terms of conduct falling beneath accepted standards. Plaintiff acknowledges, though, that "Mr. Clark cannot offer an expert opinion regarding a legal standard, and will not offer testimony from him

regarding whether Defendant Pitzer's actions were in 'wanton disregard.'" Pl.'s Resp. 9, ECF No. 173.

Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). Although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *See id.* at 1195-96. Expert testimony on a person's state of mind is generally outside the expertise of an expert, and even the more limited opinion that "Defendant Pitzer showed disregard for Plaintiff's life and safety" is an opinion of his state of mind and inappropriate expert testimony. *Cf. United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) ("the rules do not prevent an expert from drawing conclusions about intent, so long as the expert does not profess to know a defendant's intent"); *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (concluding that district court erred in allowing expert to testify that company reduced amount of padding in sun visors to save money because he lacked a scientific basis for that opinion). An expert, however, can testify to the purpose behind certain law enforcement tactics to protect the suspect's life and health. Mr. Clark, however, will be prohibited from crossing the line and usurping the jury's function of opining what Defendant Pitzer's state of mind was. *Cf. DePaepe*, 141 F.3d at 720 (explaining that expert "could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify *as an expert* that GM had a particular motive").

4. **Agreement with DOJ letter**

In his supplemental report, Mr. Clark offered an additional opinion: "I entirely agree with all of the conclusions and findings of the [DOJ letter]." Letter 1, ECF No. 126-1. He then stated he found "especially pertinent" the following conclusions and excerpted Section IV(A) of the DOJ letter. *Id.* at 2.

Defendants argue that the DOJ letter is hearsay and challenge a number of the bases for and the conclusions of the DOJ's report and its relevance to this case. For example, Defendants note that the DOJ letter does not mention the incident at issue here, and they argue that Officer Pitzer's training academy records are not deficient in terms of what is required by the State of New Mexico. Defendants argue that Mr. Clark's agreement with the DOJ letter does not make his opinions more reliable or admissible and usurps the jury role in determining the credibility of the documentation, if admitted.

In an Order allowing Plaintiff leave to add the DOJ letter to the record, the Court ruled:

> The Court concludes that the DOJ letter contains statements about matters falling squarely within Fed. Evid. Rule 803(8)(A)(ii), *see McLaughlin v. Freeman*, 2013 WL 5407041*4 (N.D. Ind. 2013), and that Defendant City of Albuquerque has not met its burden of demonstrating a general lack of trustworthiness, Fed. Evid. Rule. 803(8)(B). Accordingly, Plaintiff's motion will be granted and the DOJ letter admitted for purposes of Fed. Civ. P. Rule 56(c)(1), subject to particularized objections to individual statements.

Order 2, ECF No. 155.

Subsequently, the Court denied the City's motion for summary judgment on the municipal liability claim, relying extensively on the DOJ letter. The Court explained:

> The Court concludes that the DOJ's findings that the deficiencies in APD's use-of-force practices are longstanding and systemic would permit a jury to find that APD's chain of command has been aware of, but has consciously disregarded, a substantial risk that its use-of-force practices are resulting in violations of the Fourth Amendment's limits on the use of deadly force….
>
> A jury could find that many of the deficiencies in APD's use-of-force practices identified by the DOJ were implicated in Plaintiff's case, allowing a jury

17

> to find that "the identified deficienc[ies] in a city's training program [were] closely related to the ultimate injury." *Harris*, 489 U.S. at 391.
>
> …The Court concludes that on the evidence of record, a reasonable jury could find that Plaintiff would not have been shot but for the longstanding and systemic deficiencies in training and supervision identified by the DOJ, and that those deficiencies were a "moving force" in Officer Pitzer's use of deadly force against Plaintiff.

Mem. Op. and Order 6-8, ECF No. 178. This Court has therefore already found portions of the DOJ letter relevant to and admissible for the municipal liability claim. Defendants' arguments regarding the deficiencies in the DOJ letter go to the weight, not the admissibility of Mr. Clark's opinions, and should be the subject of cross examination, not the basis for wholesale exclusion.

Plaintiff asserts that Mr. Clark's opinion expressing agreement with the DOJ letter is shorthand for saying he relies on the DOJ letter in those respects to support his opinion based on his own knowledge, experience, and training. Notably, Defendants chose not to depose Mr. Clark. *See* Pl.'s Resp. n. 1, ECF No. 173. Given Mr. Clark's extensive experience in the field of law enforcement tactics, practices, and procedures on the use of force, the Court finds he is qualified to render opinions regarding many of the findings on use of force policies and procedures contained in the DOJ letter. Mr. Clark will need to explain how he reaches agreement with certain portions of the DOJ letter, using his specialized knowledge, training, and experience, before the introduction of each of his opinions. The Court nonetheless is not convinced on the record before it that Mr. Clark will be unable to do so. Accordingly, subject to Plaintiff laying an adequate foundation for Mr. Clark's opinions regarding the DOJ letter at trial, the Court will not exclude his opinions wholesale from the second phase of the trial, should it occur. This decision does not prevent Defendants from raising particularized objections to Mr. Clark's opinions or the relevance thereof at trial.

**IT IS THEREFORE ORDERED** that:

1. Defendant Brian Pitzer's Motion to Reconsider, and Memorandum in Support (**ECF No. 185**) is **DENIED**.

2. Defendants' Motion for Separate Trials and Memorandum in Support (**ECF No. 170**) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Defendants' request to bifurcate one trial into two separate trials before two separate jury panels is **DENIED**.

   b. Defendants' request to bifurcate is **GRANTED** to the limited extent that the Court will bifurcate one trial into phases before the same jury: first, the jury will consider evidence relevant to whether Defendant Pitzer used excessive force (Count I); and second, the jury will consider evidence pertaining to the municipal liability claim (Count II), should it be necessary.

3. Defendants' Daubert Motion, and Memorandum in Support, Requesting to Exclude Testimony of Plaintiff's Expert Roger A. Clark (**ECF No. 171**) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The Court will **GRANT** Defendants' request to exclude Mr. Clark from offering any opinions drawing conclusions from the bullet trajectory information in the investigation.

   b. The Court will **GRANT** Defendants' request to exclude Mr. Clark's opinion that "Officer Pitzer's apparent reliance on the most lethal option in a situation where less-lethal force was appropriate and mandated, can only be interpreted as w[a]nton disregard for the life and safety of Mr. Tenorio," his opinion that "Defendant Pitzer showed disregard for Plaintiff's life and safety," and in the first

phase of trial, any opinions that Defendant Pitzer violated standard operating procedures.

c. The Court will otherwise **DENY** Defendants' motion to exclude testimony of Mr. Clark, subject to the requisite foundational evidence being laid at trial and to particularized objections made at trial.

<br>

_____
**UNITED STATES DISTRICT JUDGE**