# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RUSSELL TENORIO,**

    **Plaintiff,**

**v.**                           **No. Civ. 12-01295 JCH-KBM**
                                        **Consolidated with**
                                        **No. Civ. 13-00574 JCH-KBM**

**BRIAN PITZER,**
**and THE CITY OF ALBUQUERQUE,**

    **Defendants.**

## OMNIBUS MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the following motions: (i) Plaintiff's Motion in Limine I to Limit Evidence or Testimony Regarding Plaintiff's Alleged Prior Alcohol or Drug Use and Prior Convictions (ECF No. 199); (ii) Plaintiff's Motion in Limine II to Preclude Evidence of Plaintiff's Prior Convictions (ECF No. 200); (iii) Plaintiff's Motion in Limine III to Exclude Testimony from Michelle Tenorio, Robert Torres and Hilda Valdez, Pursuant to Federal Rules of Evidence 801 through 807 (ECF No. 201); (iv) Defendants' Motion in Limine No. I: Motion to Exclude Introduction of Evidence from Other Cases or Claims or any Evidence of Allegations of Prior and Subsequent Bad Acts from Phase I of Trial (ECF No. 202); (v) Defendants' Motion in Limine No. II: Motion to Exclude any Evidence Regarding Alleged Violation of Police Standard Operating Procedures (ECF No. 203); (vi) Defendants' Motion in Limine No. III: Motion Requesting to Exclude Evidence of any Testimony, Opinions, Inferences, Exhibits, or Arguments that Officers Allegedly did not Follow Training and/or Should Have Used Less Intrusive Means (ECF No. 204); (vii) Defendants' Motion in Limine No. IV: Motion Requesting to Exclude Evidence of and Related to Plaintiff's Arrest, Detention in Jail, and Criminal Prosecution (ECF No. 205); (viii) Defendants' Motion in Limine No. V: Motion Requesting to Exclude Evidence of

and Related to Claims Asserted in and Settlement of Witnesses' Lawsuits (ECF No. 206); (ix) Defendants' Motion in Limine No. VI: Motion Requesting to Exclude the 4/10/14 Department of Justice Letter and the Settlement Agreement between the Department of Justice and the City of Albuquerque from Evidence or any Reference or Questions of Witnesses Concerning these Reports (ECF No. 207); and (x) Defendants' Motion in Limine No. VII: Motion to Preclude Plaintiff's Treating Physicians from Giving Opinion Testimony (ECF No. 208). The Court, having considered the motions, briefs, applicable law, and otherwise being fully advised, issues the rulings contained herein.

## I. PROCEDURAL HISTORY

Plaintiff filed suit against Defendants Brian Pitzer and the City of Albuquerque ("the City") asserting claims arising from events that occurred on November 11, 2010, in which Albuquerque Police Officer Pitzer shot Russell Tenorio when responding to an emergency call. The case was consolidated with the related case of *Russell Tenorio v. Andrea Ortiz*, CIV 13-574. *See* Order, ECF No. 96. On June 14, 2016, the parties stipulated to the dismissal of all claims asserted against Defendants Robert Liccione, Raymond Schultz, and Andrea Ortiz. *See* Stipulated Dismissal, ECF No. 154. The claims that remain in the consolidated cases are an excessive force claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment against Defendant Pitzer (Count I) and a municipal liability claim under 42 U.S.C. § 1983 against the City (Count II) in No. 12-cv-1295. *See* Mem. Op. and Order 2, ECF No. 178. There are two theories of liability applicable to Count I: (1) Defendant Pitzer lacked probable cause to believe Russell Tenorio presented a threat of serious physical harm to another person, and (2) he and his fellow officers recklessly and unreasonably created the situation resulting in the need to use deadly force. *See* Mem. Op. and Order 8-13, ECF No. 121. In a subsequent Memorandum Opinion and Order, this Court granted

Defendants' motion to bifurcate in part, by bifurcating the one trial into two phases before the same jury: first, the jury will consider evidence relevant to whether Defendant Pitzer used excessive force (Count I); and second, the jury will consider evidence pertaining to the municipal liability claim (Count II), should it be necessary. Mem. Op. and Order 19, ECF No. 192.

## II.    LAW

Rule 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice or confusion of the issues. Fed. R. Evid. 403. Rule 404(b) prohibits the admission of evidence of crimes, wrongs, or other acts to prove a person's character to show action that conforms to that character, but it allows evidence of other bad acts if admissible for other purposes, such as intent, knowledge, absence of mistake, or lack of accident. *See* Fed. R. Evid. 404(b).

A party in a civil case may attack a witness's character for truthfulness by evidence of a criminal conviction punishable by imprisonment for more than one year. Fed. R. Evid. 609(a)(1). Such evidence "must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A). For crimes punishable by less than a year imprisonment, evidence is admissible if the elements for the crime required proving a dishonest act or false statement. Fed. R. Evid. 609(a)(2). "[I]f more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," the evidence of conviction is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" and the proponent gives written notice of an intent to use the evidence. Fed. R. Evid. 609(b).

Rule 608(b) provides: "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). However, a court may allow a party to cross-examine a witness about specific instances of a witness's conduct if the incidents are probative of the character of the witness for truthfulness or untruthfulness. *Id.* Testimony brought under Rule 608(b) is subject to Rule 403 balancing to determine its admissibility. *United States v. Atwell*, 766 F.2d 416, 420 (10th Cir. 1985).

## III. LEGAL ANALYSIS

### A. Plaintiff's Motion in Limine I to Limit Evidence or Testimony Regarding Plaintiff's Alleged Prior Alcohol or Drug Use and Prior Convictions (ECF No. 199)

Plaintiff seeks to exclude any witness from referring to Plaintiff as an "alcoholic," "addict," or "drug addict," from introducing evidence of Plaintiff's use of alcohol or drugs prior to November 11, 2010, and from introducing evidence of prior convictions of Plaintiff that were not known to the officers at the time. Plaintiff contends that the labels refer to medical diagnoses requiring expert opinion. As for Plaintiff's prior convictions, the Court will discuss the admission of the convictions in the next section as they were also the topic of Plaintiff's Motion in Limine II (ECF No. 200).

Turning to Mr. Tenorio's prior alcohol and drug use, it appears undisputed that Ms. Valdez called 911 for assistance with Mr. Tenorio and "told APD dispatch that Plaintiff had been drinking; that he had a knife, which he had held to his throat; that he had threatened to kill himself; that no one at the house was injured; that Plaintiff had broken some windows; and that she was afraid he was going to hurt himself or his wife." Pl.'s Mot. 3, ECF No. 199. When asked by dispatch whether he had done this before, Ms. Valdez replied "yes" that he had gotten intoxicated but could not

drink because he was on anti-seizure medications. *Id.* According to Plaintiff, dispatch told the officers "that the subject was intoxicated, a possible suicide, with a history of seizures, was violent, and still had a knife." *Id.* at 4-5. Consequently, information of Mr. Tenorio's past alcohol or drug use, unknown to Officer Pitzer and the other officers on November 11, 2010, would be irrelevant to the question of the reasonableness of Officer Pitzer's use of force, so the officers and the parties' excessive force expert witnesses should not introduce such evidence. Indeed, Defendants acknowledge that they will not be asking their expert about Plaintiff's alcoholism and past drug use, but they would ask about Plaintiff's alcohol use on November 11, 2010, because that information was known to the officers. Defs.' Resp. 2 n.1, ECF No. 223.

Defendants, however, also argue that the evidence is relevant to rebut Plaintiff's assertion that his chronic kidney disease developed due to the gunshot wound and to the issue of Plaintiff's life expectancy for purposes of calculating damages. Defendants seeks to cross examine Plaintiff's treating physicians as to whether alcohol use and/or a family history of chronic kidney disease can cause the condition. Mr. Tenorio's history of alcohol and drug use may be relevant to his damages. *Cf. Lewis v. District of Columbia*, 793 F.2d 361, 363 (D.C. Cir. 1986) (holding that prior drug use was admissible under Rule 404(b) to allow jury to assess whether damages flowed from shooting or from drug withdrawal). The Court will therefore deny Plaintiff's request to exclude the evidence of Mr. Tenorio's past drug and alcohol use for the limited purpose of assessing damages, and the jury will be instructed as the limited purpose of the evidence. The Court, however, will prohibit a witness from referring to Plaintiff as an "alcoholic" or "addict" unless the foundation is first laid that the witness has adequate knowledge or expertise to provide the testimony.

### B. Plaintiff's Motion in Limine II to Preclude Evidence of Plaintiff's Prior Convictions (ECF No. 200)

Plaintiff seeks to exclude evidence at trial of Mr. Tenorio's prior convictions for attempted larceny in 1994, commercial burglary in 1998, and two misdemeanor counts of attempted aggravated assault with a deadly weapon in March 2007. Plaintiff argues that the age of the convictions and the minimal probative value of the evidence compels their exclusion under Rules 609 and 403. Defendants argue the prior convictions are probative of Mr. Tenorio's intent and mental capacity to commit a crime; his prior knowledge that attempted aggravated assault with a deadly weapon was a crime; and to rebut Plaintiff's claim for damages. Defendants also seek to use evidence of Plaintiff's commercial burglary for purposes of impeachment.

### 1. Attempted Aggravated Assault with a Deadly Weapon

On March 9, 2007, Mr. Tenorio pled guilty to two misdemeanor counts of attempt to commit aggravated assault with a deadly weapon for events occurring on September 22, 2006. *See* Def.'s Ex. K, ECF No. 223-2; Def.'s Ex. L, ECF No. 223-4. According to the police report, the 2006 incident involved Plaintiff pulling out a knife, waving it in the direction of two persons as he was escorted out of a bar, stepping towards the men with the knife still in his hand, then walking away, and eventually dropping the knife. *See* Def.'s Ex. K1, ECF No. 223-2.

Defendants assert that Plaintiff has made his intent an issue in this case by claiming in his summary judgment response that he never intentionally or unintentionally moved the paring knife at his side or made an action establishing aggressive intent towards the officers or other persons. Defendants therefore argue that the March 2007 plea of guilty to two counts of attempted aggravated assault with a knife is relevant to Mr. Tenorio's intent to commit a crime when he closed the distance on Officer Pitzer with a knife at his side. Rule 404(b), however, prohibits the admission of evidence of crimes, wrongs, or other acts to prove a person's character to show action that conforms to that character. *See* Fed. R. Evid. 404(b). The Court finds the evidence has

insufficient probative value of Mr. Tenorio's intent on November 11, 2010 to overcome its prejudicial effect.

Defendants additionally argue that evidence of the 2007 plea is admissible to show Mr. Tenorio understood that attempted assault with a knife is a criminal offense and had the ability to comply with a command to "drop the knife," rebutting any claim Plaintiff may make that his traumatic brain injury rendered him incapable of understanding or complying with Officer Pitzer's commands to put down the knife. Should evidence be introduced that Mr. Tenorio's traumatic brain injury rendered him incapable of understanding and/or complying with Officer Pitzer's commands, then perhaps the evidence could have impeachment value. At this stage, however, the Court finds the possible relevance of the evidence is outweighed by its prejudicial effect and will exclude evidence of the 2007 misdemeanor convictions. This ruling does not prevent Defendants from raising this issue again at trial if the impeachment value becomes apparent.

### 2. Commercial Burglary

Mr. Tenorio pled no contest on or around March 12, 1998, to the charge of commercial burglary, a 4th degree felony. *See* Def.'s Ex. J, ECF No. 223-1. Mr. Tenorio was placed on two years of probation and later received a conditional discharge. Pl.'s Ex. 3, ECF No. 200-3. Plaintiff contends that, because he received a conditional discharge, the charge does not constitute a conviction under Rule 609(c) and the evidence is not admissible under Rule 609. Additionally, Plaintiff argues that the age and facts of the crime make the probative value minimal and outweighed by the prejudicial effect.

Federal Rule of Evidence 609(c)(1) provides that a conviction is not admissible if "the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated, and the person has

not been convicted of a later crime punishable by death or by imprisonment for more than one year." Under New Mexico law, a "conditional discharge entered without an adjudication of guilt is not considered a conviction." *State v. Lassiter*, 2016-NMCA-078, ¶ 6, 382 P.3d 918. Plaintiff thus asserts that a conditional discharge is an "equivalent procedure based on a finding that the person has been rehabilitated." Although Defendants argue the plea is admissible under Rule 609(a), they did not refute Plaintiff's argument that Rule 609(c)(1) bars the commercial burglary charge. Defendants have thus not met their burden to show the admissibility of the 1998 commercial burglary no-contest plea under Rule 609.

In addition to the prohibition under Rule 609(c), Rule 609(b) provides a 10-year time limit, such that for felonies more than 10 years old, the evidence of conviction is only relevant if the proponent gives written notice and "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The Court is not convinced that the no-contest plea sheds light on Defendants' ability to understand Officer Pitzer's commands, and thus is more prejudicial than probative to issues regarding liability. Defendants also assert that the crime of burglary is an act of dishonesty and admissible under Rule 608(b). Again, Defendants have not persuaded the Court that the commercial burglary plea is sufficiently probative of Mr. Tenorio's honesty to outweigh its prejudicial effect. Accordingly, the Court will exclude evidence of Mr. Tenorio's 1998 commercial burglary under Rule 608 as well.

### 3. Attempted larceny

According to the police report, on November 4, 1994, Mr. Tenorio took without permission a wheelchair from Presbyterian Hospital. *See* Pl.'s Ex. 4, ECF No. 200-4. When the officer asked what he was doing, Mr. Tenorio reportedly responded, "I want to go to jail." *Id.* Mr. Tenorio was convicted of misdemeanor larceny for which he was reportedly placed on 364 days of supervised

probation. *See* Pl.'s Mot. 1-2, ECF No. 200. Given the age of the misdemeanor conviction and the facts surrounding it, the Court is not convinced it is sufficiently probative of Mr. Tenorio's truthfulness or to any fact at issue in this case to outweigh its prejudicial effect. The Court will therefore exclude the evidence of Mr. Tenorio's 1994 larceny conviction under Rules 403 and 609(b).

### 4. Probative value to rebut damages

Finally, Defendants contend the evidence of convictions is admissible to rebut Plaintiff's claims of damages and life expectancy. Based on the record before it, the Court is not persuaded that Mr. Tenorio's criminal history is sufficiently probative of Mr. Tenorio's lifestyle and life expectancy to outweigh its prejudicial effect. The Court, however, currently is unaware of all the evidence Plaintiff intends to present to support his damages claim. This ruling does not preclude Defendants from re-raising the issue at trial outside the presence of the jury should Plaintiff open the door to the probative value of the evidence to rebut his damages claim.

### C. Plaintiff's Motion in Limine III to Exclude Testimony from Michelle Tenorio, Robert Torres and Hilda Valdez, Pursuant to Federal Rules of Evidence 801 through 807 (ECF No. 201)

Plaintiff intends to call Michelle Tenorio, Robert Torres, and Hilda Valdez as witnesses to the events on November 11, 2010. Plaintiff seeks to exclude these witnesses from testifying about "what they said or what they heard each other say because those statements would be inadmissible hearsay." Pl.'s Mot. in Limine III 2, ECF No. 201. According to Plaintiff, each will testify that before police arrived, he or she told Plaintiff to put down the knife, and that each could testify that the others told Plaintiff to put down the knife. *Id.* Plaintiff argues that the statements are offered for the truth of the matter asserted to prove that they told Mr. Tenorio to put down the knife.

Defendants assert that counsel asked Mr. Tenorio in his deposition, when attempting to determine Mr. Tenorio's intent that night, if Ms. Tenorio, Mr. Torres, or Ms. Valdez had asked him to drop the knife that night, and Mr. Tenorio denied that they did so. Defendants thus argue that the statements are relevant for impeachment purposes and are not being offered for their truth.

The statements Plaintiff seeks to exclude are orders, not offered for the truth of the matter, and Defendants seek to use the statements for purposes of impeachment. Consequently, the statements are not impermissible hearsay. *Cf. United States v. Rutland*, 705 F.3d 1238, 1253 (10th Cir. 2013) (explaining that statements were instructions not offered for their truth, and thus admissible); *Thornburg v. Mullin*, 422 F.3d 1113, 1128 (10th 2005) ("Statement (4) was an order. *See United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984) (orders are not hearsay because they are not offered for their truth)."). The Court will thus deny Plaintiff's motion in limine III.

### D. Defendants' Motion in Limine No. I: Motion to Exclude Introduction of Evidence from Other Cases or Claims or any Evidence of Allegations of Prior and Subsequent Bad Acts from Phase I of Trial (ECF No. 202)

Defendants move to exclude from Phase 1 of the trial evidence pertaining to Brian Pitzer, Doug Moore, Robert Liccione, Francisco Hernandez, and/or Raymond Schultz of unrelated lawsuits against them, character evidence, Internal Affairs/Citizen Complaints/Independent Review Office Complaints against them, early intervention and/or early warning memos, other officer involved shootings involving them, and unrelated lawsuits, claims and judgments against the City or other APD officers. Def.'s Mot. in Limine No. I 2-3, ECF No. 202. Defendants acknowledge that some of the categories of evidence may be probative of the municipal liability claim in Phase 2, but nevertheless reserve objection until the second phase, depending on the evidence Plaintiff intends to introduce. *Id.* at 8-9. Plaintiff responds that he "does not intend to introduce any of these documents/pleadings as affirmative evidence in support of his excessive

force claims during Phase 1 of the trial, but he would seek to admit evidence from any category of evidence identified if a witness opens the door and the evidence is for the permissible purpose of impeachment." Pl.'s Resp. 1, ECF No. 213. Plaintiff opposes the motion to the extent Defendants seek to limit introduction of the categories of evidence during Phase 2 of the trial.

The Court will grant Defendants' motion to limit admission of the specified categories of evidence in Phase 1 of the trial as affirmative evidence. This ruling does not prevent Plaintiff from seeking leave of Court during trial outside the presence of the jury for permission to use evidence from the specified category of evidence on impeachment, should a witness open the door to such testimony. This ruling also does not pertain to the admissibility of the evidence in Phase 2.

### E. Defendants' Motion in Limine No. II: Motion to Exclude any Evidence Regarding Alleged Violation of Police Standard Operating Procedures (ECF No. 203)

Defendants seek to exclude Plaintiff's introduction of evidence that Defendant Pitzer violated any APD standard operating procedures ("SOPs"), specifically No. 2-52-3(D) – When feasible, some warning should be given prior to engaging in the use of deadly force, and No. 2-13 – Response to the Mentally Ill/Suspected Mentally Ill. Def.'s Mot. in Limine No. II 1-2, ECF No. 203. In response, Plaintiff states: "Though Plaintiff will not seek to introduce evidence or testimony through Mr. Clark that Defendant Pitzer's violation of these or other SOP's constitutes evidence of a constitutional violation, Plaintiff will seek to introduce testimony on these or other SOPs in the context of what constitutes generally accepted police procedures when considering use of force or when dealing with the mentality ill or those suspected of being mentally ill." Pl.'s Resp. 1, ECF No. 214. Plaintiff asks the Court to deny Defendants' motion in limine No. II, arguing that his expert on police procedures, Roger Clark, should be able to testify about generally acceptable procedures and standards in law enforcement to assist the jury in understanding the

objective standard of a reasonable law enforcement officer. *See id.* at 2-3. Plaintiff requests that the Court not exclude reference to SOPs as though they do not exist, which would place the expert witness in a vacuum without a specific, credible basis for his expertise. *See id.*

This Court in a prior Memorandum Opinion and Order discussed the scope of Mr. Clark's testimony in Phase 1:

> It is also permissible for an expert to testify concerning what tools and tactics reasonable officers have available to them when faced with a situation like the one here and the abilities and limitations of the respective tactics and tools, such as the Taser and bean-bag gun. *See Zuchel v. City and County of Denver*, 997 F.2d 730, 742 (10th Cir. 1993) (stating that courts generally allow experts in police training, tactics, and use of deadly force to state opinions on whether conduct at issue fell below accepted standards in field of law enforcement); *Barr v. City of Albuquerque*, No. 12-CV-01109-GBW/RHS, Order on Motions Relating to Expert Testimony 5, (filed Oct. 23, 2014), ECF No. 272 ("General testimony about tactics which are available to officers in these situations and of which reasonable officers ought to be aware is admissible. This would include testimony about methods used to approach subjects, de-escalation techniques and other 'CIT' techniques known to officers, and the availability of cover to Officer Kelly."). Plaintiff, however, must take care that Mr. Clark does not cross the line into unacceptable territory in the first phase of the trial and opine that Officer Pitzer violated standard operating *procedures*, so as not to confuse the jury on the relevant constitutional standard. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005) ("Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard."). In the first phase of the trial, the Court will therefore only permit the more limited opinions by Mr. Clark as to the availability of less lethal options and tactics and that the less lethal options offered the ability to overpower Mr. Tenorio, without opining that such less lethal options were required.

Mem. Op. and Order 14-15, ECF No. 192.

Evidence of the violation of a standard operating procedure ("SOP") is generally inadmissible to prove a Section 1983 excessive force claim because of the minimal probative value of the evidence balanced against the likelihood the jury could confuse legal and administrative standards. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005). Moreover, the Tenth Circuit has noted that "[i]f courts treated these administrative standards as evidence of

constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards." *Id.* The weight of authority in the Tenth Circuit supports excluding evidence in Phase 1 of whether Officer Pitzer violated specific SOPs because of the likelihood a jury would confuse the violation of a specific SOP with the relevant constitutional standard. *Cf. Moreno v. Taos County Bd. of Com'rs*, 587 F. App'x 442, 446 (10th Cir. Sept. 24, 2014) ("The district court's finding that evidence of violation of Taos County policy was inadmissible as to the excessive force claim comports with our Fourth Amendment jurisprudence."); *Tanberg*, 401 F.3d at 1164 ("If Officer Sholtis violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiffs' arrest violated the reasonableness requirement of the Fourth Amendment."); *Martinez v. Salazar*, Civ. No. 14-534 KG/WPL, 2016 WL 9488863, at *8 (D. N.M. Dec. 14, 2016) (excluding testimony of expert that officers violated standard operating procedures in excessive force claim because of weight of authority).

Assuming Defendants' motion in limine is limited to Phase 1, the Court will grant the motion under Rule 403 to the extent it seeks to limit evidence of specific SOPs so as not to confuse jury on the appropriate standard. Although reference to a specific SOP or violation thereof has the danger of confusing the jury about the constitutional standard, evidence concerning tactics available to officers, such as warnings and techniques used to respond to the mentally ill, is relevant, not unduly prejudicial, and admissible. Finally, this ruling does not apply to Phase 2.

**F. Defendants' Motion in Limine No. III: Motion Requesting to Exclude Evidence of any Testimony, Opinions, Inferences, Exhibits, or Arguments that Officers Allegedly Did Not Follow Training and/or Should Have Used Less Intrusive Means (ECF No. 204)**

Defendants argue that the following evidence or argument is impermissible and should be excluded under Rule 403:

> Plaintiff should be precluded from introducing evidence and/or arguing: (1) Defendant Pitzer should have been CIT certified in order to respond to the incident involving Plaintiff; (2) Defendant Pitzer and/or other officers should have utilized de-escalation techniques; (3) Defendant Pitzer and/or other officers failed to follow CIT training in utilizing de-escalation techniques; (4) Defendant Pitzer and/or other officers should have taken cover or retreated; and/or (5) Defendant Pitzer and/or other officers should have used less lethal force.

Def.'s Mot. in Limine. No. III 5, ECF No. 204. Defendants contend that this evidence is not relevant because the constitutional standard is one of objective reasonableness and there is no mandatory duty to use less lethal options or to retreat.

Plaintiff responds that it will adhere to this Court's Memorandum Opinion and Order (ECF No. 192) limiting Mr. Clark's testimony, and notes that the Court permitted Mr. Clark to testify that the officers had less lethal options and tactics available to them. Pl.'s Resp. 1-2, ECF No. 215. Plaintiff states his intention to "seek to introduce testimony which mirrors or is similar to the content of APD Procedures 2-52 … and 2-13 … to the extent that these procedures contain recognized and accepted police procedures for reasonableness when preparing to use force, deadly force or when dealing with the mentality ill or those suspected of being mentally ill…." *Id.* at 2. Plaintiff explains that this evidence can be presented without introducing the SOPs themselves. *Id.* Plaintiff intends to present expert testimony regarding content identified in SOPs and New Mexico's Police Officer Standards for Training to explain to the jury the standards that apply to objectively reasonable law enforcement officers when encountering people in mental crisis or when using force. *Id.* at 3.

The Court has largely already addressed these issues in its ruling on the scope of Mr. Clark's permitted testimony, as set forth in Memorandum Opinion and Order 14-15, ECF No. 192.

The Court will grant in part and deny in part Defendants' Motion in Limine No. III. The Court will deny the motion to the extent that Plaintiff is permitted to introduce general testimony about tactics available to officers in these situations and of which reasonable officers should be aware, such as testimony about methods used to approach subjects, de-escalation techniques, other 'CIT' techniques known to officers, and the availability of cover. *See id.* This evidence of specialized knowledge about law enforcement techniques is relevant and will assist the jury in determining the issue of the amount of force a reasonable officer would have used under the circumstances. Nor is the evidence unduly prejudicial, and thus, it is admissible under Rule 403. Consequently, the Court will allow Plaintiff to introduce opinions by Mr. Clark as to the availability of less lethal options and tactics and that the less lethal options offered the ability to overpower Mr. Tenorio.

The Court, however, will grant the motion in part under Rule 403 by excluding in the first phase of the trial evidence that Officer Pitzer violated SOPs, so as not to confuse the jury on the relevant constitutional standard. In the first phase of the trial, the Court will also exclude Mr. Clark from opining that less lethal options were required, that CIT certification was required, or that retreating was required. *Cf. Blossom v. Yarbrough*, 429 F.3d 963, 968 (10th Cir. 2005) ("It is well settled that the 'reasonableness standard does not require that officers use alternative, less intrusive means' when confronted with a threat of serious bodily injury.") (quoting *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001)).

### G. Defendants' Motion in Limine No. IV: Motion Requesting to Exclude Evidence of and Related to Plaintiff's Arrest, Detention in Jail, and Criminal Prosecution (ECF No. 205)

Defendants assert that Plaintiff's claims regarding wrongful arrest, malicious prosecution, violations of the Americans with Disabilities Act and the Fourteenth Amendment were dismissed pursuant to stipulated orders of dismissal, and thus, any evidence related to Plaintiff's arrest,

detention in jail, and criminal prosecution is irrelevant to the excessive force and municipal liability claims that remain. Defendants argue that the subsequent events are not relevant to liability, and to the extent they are marginally relevant to his claim for damages, they should be excluded under Rule 403. Defendants assert that evidence that the criminal charges against Plaintiff were ultimately dismissed against him risks confusing the jury by causing the jury to conclude that Defendants acted improperly based on the dismissal and by improperly awarding damages to Plaintiff for claims that have been dismissed.

Plaintiff opposes the motion and seeks to introduce, during Phase 1 on the issue of damages and Phase 2 to show APD's modus operandi in deadly force situations, evidence that officers arrested Mr. Tenorio, another officer charged him with four counts of aggravated assault with a deadly weapon, and that the presiding court dismissed all four counts. Plaintiff notes that evidence will be presented by both parties that audibly depict Plaintiff being handcuffed and taken into custody after he was shot. Pl.s Resp. 1, ECF No. 216 (citing belt tape exhibits). Plaintiff explains that his medical records include references to visitor restrictions and a police officer being posted at the door and medical charts generated by a contractor of Metropolitan Detention Center where Plaintiff continued to require treatment. Plaintiff contends that a jury will reasonably infer from this evidence that Plaintiff was arrested after being shot and remained so while hospitalized.

Plaintiff additionally asserts that the evidence that he was restricted from contact with his wife while hospitalized and under arrest caused him to suffer emotional distress that stemmed from the use of excessive force upon him. "Thus, while Plaintiff does not seek compensation for his wrongful arrest or malicious prosecution, and indeed dismissed these claims voluntarily in order to streamline the matters for trial and avoid further potential delay which could have resulted from motions for qualified immunity, Plaintiff does seek emotional distress damages and would propose

to admit the aforementioned evidence for the purpose of supporting his damages claims." *Id.* at 2-3. Finally, Plaintiff argues that the evidence is not unduly prejudicial because the jury will have before it evidence that Plaintiff did not drop a knife upon the officers' commands, and that a reasonably jury could conclude based on Defendants' theory of the incident that an arrest and criminal charge may follow such events. Plaintiff asserts he may suffer prejudice if the jury does not hear evidence of the court's dismissal because the evidence is "necessary to defeat any false impression that Plaintiff was incarcerated because he plead guilty or was convicted." *Id.* at 4.

The evidence of Plaintiff's arrest, detention, and prosecution is not relevant to either Count 1 or Count 2. Instead, the evidence is relevant to claims that have been dismissed. Permitting any such evidence will only confuse the jury as to the issues to be decided. As to damages, Plaintiff would only be entitled to compensatory damages proximately caused by Officer Pitzer's use of excessive force. The additional emotional distress Plaintiff suffered from being detained while in the hospital and isolated from his family was proximately caused by the person(s) who detained and arrested him. The Court will not permit the introduction of evidence of a collateral issue that could result in a mini trial of the merits of Plaintiff's arrest and why the case was dismissed against him when Plaintiff voluntarily dismissed his claims for unlawful arrest and malicious prosecution.

Moreover, to the extent the medical records contain references to Plaintiff's detention and could cause the jury to speculate as to whether and why Plaintiff was arrested, that evidence should be redacted from the medical records to avoid opening the door to the issue of Plaintiff's detention. The Court is not convinced that hearing handcuffs in the belt tape will cause the jury to speculate that Plaintiff was arrested and subsequently charged, rather than secured for officer safety reasons. Consequently, the Court will grant Defendants' motion in limine No. 4 under Rule 403 because

the probative value of the evidence is outweighed by the danger of confusing the issues and misleading the jury.

### H. Defendants' Motion in Limine No. V: Motion Requesting to Exclude Evidence of and Related to Claims Asserted in and Settlement of Witnesses' Lawsuits (ECF No. 206)

Defendants assert that Plaintiff's family members, Michaele Tenorio, Hilda Valdez, and Robert Torres, are all witnesses in this case, and each filed separated lawsuits against APD officers, former APD Chief Raymond Schultz, and the City in which they claimed they were unlawfully arrested after the deadly force encounter occurred. Defs.' Mot. in Limine No. V 1-2, ECF No. 206. Those lawsuits were settled and dismissed with prejudice. *See id.* at 2. Defendants seek to exclude evidence related to the claims asserted in those lawsuits and the resolution thereof. Defendants assert that Defendant Pitzer was not a party to those lawsuits and did not hold any of the witnesses in custody, and thus, the evidence is not relevant to this case. Defendants further contend the settlements are prohibited under Rules 408 and 403.

"Plaintiff does not oppose Defendants' Motion as to Phase I of trial unless introduction is for some reason required to demonstrate bias or prejudice under Rule 408—both permissible purposes under the rule." Pl.'s Resp. 1, ECF No. 221. Additionally, Plaintiff "does not oppose exclusion of the fact of lawsuits brought and settlements entered into by the witnesses in Phase II, but does oppose exclusion of evidence of the <u>facts</u> surrounding the detentions and arrests of the family members who witnessed Mr. Tenorio's shooting." *Id.* at 2. Plaintiff contends the evidence is relevant to the claim that the City has an unwritten custom condoning the use of deadly force. Plaintiff notes that after the shooting, officers immediately handcuffed and separated the witnesses until they gave statements to investigating officers. *Id.* at 3. Plaintiff argues:

> The CABQ had a custom and practice of detaining witnesses to police shootings in locked police cars and removing all ability for them to speak to anyone other than

police officials. These detentions would frequently last for several hours. By virtue of detaining witnesses and preventing them from speaking to anyone, Officers with CABQ were able to engage in [] activities that amounted to a cover-up or attempted cover-up. While the witnesses were detained and were unable to contact any friends or family members, Officer Pitzer was placed in a police car with a "buddy officer" who communicated with him and was also provided access to a mental health professional on scene. A mental health professional was not provided to the witnesses even though they witnessed their loved one shot after threatening to harm only himself. Mr. Tenorio's family members were not able to receive any information about his condition during this detention.

… The fact that Officers working in the field are aware that if they engage in an excessive use of force, any civilian witnesses to that use of force will quickly be detained, refused contact with anyone outside the police department and questioned by investigators who have an eye toward exonerating the Officer in question encourages the custom and practice of unnecessary use of force. Officer Pitzer was certainly aware of the police department's practice of illegally detaining witnesses as he engaged in the use of deadly force in a previous incident. This custom and policy enables the CABQ to control and manipulate witness statements with an eye toward exonerating the Officer who used unnecessary force.

*Id.* at 4-5.

Even if the practice of detaining and separating witnesses is relevant to whether the City had a custom and policy in place encouraging the use of force, the evidence of the detention of these witnesses *after* Officer Pitzer shot Plaintiff is not relevant to whether the *prior* pattern and practice of separating witnesses caused the use of force here. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("As for any failure to discipline Officer Aragon, basic princip[les] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation."). Although the Tenth Circuit acknowledged in *Cordova* that evidence of a subsequent cover-up might in some circumstances provide circumstantial evidence of the city's policy and customs, the Court is not convinced that the evidence of the witnesses' detentions here is sufficiently probative of whether a custom or practice caused Officer Pitzer's alleged excessive use of force to outweigh its prejudicial effect and likelihood of confusing the

issues in this case. The Court will therefore exclude the evidence of the post-shooting detentions of Mrs. Tenorio, Ms. Valdez, and Mr. Torres under Rule 403.

Notably, Defendants' motion did not address the pre-shooting general practice of detaining witnesses after a police shooting and its potential relevance to the municipal liability claim, so the Court will not decide that issue herein. This ruling only precludes evidence of the specific detentions of Michaele Tenorio, Hilda Valdez, and Robert Torres following the shooting in both phases of the trial.

I. **Defendants' Motion in Limine No. VI: Motion Requesting to Exclude the 4/10/14 Department of Justice Letter and the Settlement Agreement between the Department of Justice and the City of Albuquerque from Evidence or any Reference or Questions of Witnesses Concerning these Reports (ECF No. 207)**

Defendants move to exclude evidence of the 4/10/14 Department of Justice letter ("DOJ letter") and settlement agreement between the DOJ and City, arguing that the documents contain hearsay, serve as offers of compromise, are irrelevant, are unfairly prejudicial, are misleading, and would confuse the jury. Defendants contend that the report is inadmissible as a public record because it lacks adequate indicia of reliability, and that the settlement agreement resulting from the case between the DOJ and City is not admissible under Rule 408. Defendants point out a provision in the settlement agreement stating it "shall not be construed as an admission or evidence of liability under any federal, state, or municipal law including, but not limited to, 42 U.S.C. § 1983. Nor is the City's entry into this Agreement an admission by the City, APD, or any officer or employee that they have engaged in any unconstitutional, illegal, or otherwise improper activities or conduct." Def.'s Mot. in Limine No. VI 8, ECF No. 207. Finally, Defendants argue the Court should exclude the DOJ letter and settlement agreement under Rule 403 because of the danger the jury would give undue deference to the opinion of the DOJ and substitute the DOJ's conclusions for its own judgment. *Id.* at 8.

Plaintiff responds that he does not intend to introduce the entire DOJ letter or settlement agreement; instead, "Plaintiff does intend to introduce the portion of the DOJ Letter the Court has already determined will be admitted and will elicit testimony during Phase II from his expert, Roger Clark, and from former Chief Ray Schultz, concerning this portion of the report." Pl.'s Resp. 1, ECF No. 217. Plaintiff also seeks to reserve the ability to introduce portions if they become relevant to show bias or prejudice. *Id.* Plaintiff contends that the Court, in ruling the report admissible under Rule 56, essentially ruled it admissible at trial. *Id.* at 2.

Indeed, previously, after a hearing addressing the admissibility of the DOJ letter, the Court issued an Order allowing Plaintiff leave to add the DOJ letter to the record:

> The Court concludes that the DOJ letter contains statements about matters falling squarely within Fed. Evid. Rule 803(8)(A)(ii), *see McLaughlin v. Freeman*, 2013 WL 5407041*4 (N.D. Ind. 2013), and that Defendant City of Albuquerque has not met its burden of demonstrating a general lack of trustworthiness, Fed. Evid. Rule. 803(8)(B). Accordingly, Plaintiff's motion will be granted and the DOJ letter admitted for purposes of Fed. Civ. P. Rule 56(c)(1), subject to particularized objections to individual statements.

Order 2, ECF No. 155. Rule 803(8)(A) provides an exception to the hearsay rule for public records that set out "in a civil case … factual findings from a legally authorized investigation," Fed. R. Evid. 803(A)(iii), so long as the opponent "does not show that the source of information or other circumstances indicate a lack of trustworthiness," *id.* at 803(8)(B).

Subsequently, the Court denied the City's motion for summary judgment on the municipal liability claim, relying on 22 findings contained in the DOJ letter. Mem. Op. and Order 3-5. The Court explained its ruling as follows:

> The Court concludes that the DOJ's findings that the deficiencies in APD's use-of-force practices are longstanding and systemic would permit a jury to find that APD's chain of command has been aware of, but has consciously disregarded, a substantial risk that its use-of-force practices are resulting in violations of the Fourth Amendment's limits on the use of deadly force….

> A jury could find that many of the deficiencies in APD's use-of-force practices
> identified by the DOJ were implicated in Plaintiff's case, allowing a jury to find
> that "the identified deficienc[ies] in a city's training program [were] closely related
> to the ultimate injury." *Harris*, 489 U.S. at 391.

> …The Court concludes that on the evidence of record, a reasonable jury could find
> that Plaintiff would not have been shot but for the longstanding and systemic
> deficiencies in training and supervision identified by the DOJ, and that those
> deficiencies were a "moving force" in Officer Pitzer's use of deadly force against
> Plaintiff.

Mem. Op. and Order 6-8, ECF No. 178.

Moreover, Defendants sought to exclude Plaintiff's expert, Roger Clark, from expressing

opinions agreeing with the DOJ letter. This Court held: "Defendants' arguments regarding the

deficiencies in the DOJ letter go to the weight, not the admissibility of Mr. Clark's opinions, and

should be the subject of cross examination, not the basis for wholesale exclusion…. Accordingly,

subject to Plaintiff laying an adequate foundation for Mr. Clark's opinions regarding the DOJ letter

at trial, the Court will not exclude his opinions wholesale from the second phase of the trial, should

it occur. This decision does not prevent Defendants from raising particularized objections to Mr.

Clark's opinions or the relevance thereof at trial." Mem. Op. and Order 18, ECF No. 192.

This Court has therefore already found portions of the DOJ letter relevant to and admissible

for the municipal liability claim, specifically relying on 22 findings contained therein. This Court

will not revisit the admissibility of the DOJ letter under Federal Rule of Evidence 803(8). *Cf.*

*Daniel v. Cook County*, 833 F.3d 728, 739-42 (7th Cir. 2016) (concluding that Department of

Justice investigative report fell within Rule 803(8)(A)(iii) hearsay exception because it combined

third-party statements from jail staff, medical professionals, and inmates with investigator's on-

scene observations from jail visits and collaboration with consultants and made conclusions based

on sum of evidence). Defendants' arguments concerning errors, conflicting statements, and

omissions in the report are issues ripe for cross examination and go to the weight the jury should

give the evidence, but as the Court previously found, Defendants have not shown a lack of trustworthiness to support wholesale exclusion. *See id.* at 742.

Defendants' concerns that the jury may substitute its judgment for the DOJ's conclusions or that the jury may be confused by the DOJ letter's suggestions for less-intrusive-means reforms may be addressed by appropriate jury instructions. The DOJ letter is highly probative of the issues in Phase 2 and its probative value is not outweighed by the danger of prejudice, confusion of the issues, or misleading the jury. The Court finds the DOJ letter generally admissible under Rule 403. This Court's previous ruling admitting the DOJ letter under Rule 803(8) was "subject to particularized objections to individual statements." This ruling therefore does not prevent Defendants from making particularized objections to individual statements from the DOJ letter at trial.

Finally, as for evidence of the settlement agreement reached between the DOJ and City, Plaintiff "does not plan to introduce the specific terms of the settlement agreement reached unless it somehow becomes necessary or for a proper purpose such as to show bias or prejudice." Federal Rule of Evidence 408(a) prohibits admission of evidence of offers of compromise to settle claims. *See* Fed. R. Evid. 408(a)(1). The Court will therefore exclude evidence of the Settlement Agreement under Rule 408, as well as under Rule 403.

### J. Defendants' Motion in Limine No. VII: Motion to Preclude Plaintiff's Treating Physicians from Giving Opinion Testimony (ECF No. 208)

On February 13, 2019, Defendants filed a Notice withdrawing their Motion in Limine No. VII, after having conducted a trial deposition of Dr. Timothy Perez on February 12, 2019. *See* Notice, ECF No. 238. The Court therefore finds this motion is moot.

**IT IS THEREFORE ORDERED** that

1. Plaintiff's Motion in Limine I to Limit Evidence or Testimony Regarding Plaintiff's Alleged Prior Alcohol or Drug Use and Prior Convictions (**ECF No. 199**) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The Court **DENIES** Plaintiff's request to exclude the evidence of Mr. Tenorio's past drug and alcohol use for the limited purpose of assessing damages, and the jury will be instructed as to the limited purpose of the evidence.

   b. In other respects, Plaintiff's motion in limine is **GRANTED**.

2. Plaintiff's Motion in Limine II to Preclude Evidence of Plaintiff's Prior Convictions (**ECF No. 200**) is **GRANTED**.

3. Plaintiff's Motion in Limine III to Exclude Testimony from Michelle Tenorio, Robert Torres and Hilda Valdez, Pursuant to Federal Rules of Evidence 801 through 807 (**ECF No. 201**) is **DENIED**.

4. Defendants' Motion in Limine No. I: Motion to Exclude Introduction of Evidence from Other Cases or Claims or any Evidence of Allegations of Prior and Subsequent Bad Acts from Phase I of Trial (**ECF No. 202**) is **GRANTED** as described herein.

5. Defendants' Motion in Limine No. II: Motion to Exclude any Evidence Regarding Alleged Violation of Police Standard Operating Procedures (**ECF No. 203**) is **GRANTED** as to Phase 1 as described herein.

6. Defendants' Motion in Limine No. III: Motion Requesting to Exclude Evidence of any Testimony, Opinions, Inferences, Exhibits, or Arguments that Officers Allegedly did not Follow Training and/or Should Have Used Less Intrusive Means (**ECF No. 204**) is **GRANTED IN PART AND DENIED IN PART** as described herein.

7. Defendants' Motion in Limine No. IV: Motion Requesting to Exclude Evidence of and Related to Plaintiff's Arrest, Detention in Jail, and Criminal Prosecution (**ECF No. 205**) is **GRANTED**. The medical records that the parties intend to admit at trial should be redacted as described herein.

8. Defendants' Motion in Limine No. V: Motion Requesting to Exclude Evidence of and Related to Claims Asserted in and Settlement of Witnesses' Lawsuits (**ECF No. 206**) is **GRANTED**.

9. Defendants' Motion in Limine No. VI: Motion Requesting to Exclude the 4/10/14 Department of Justice Letter and the Settlement Agreement between the Department of Justice and the City of Albuquerque from Evidence or any Reference or Questions of Witnesses Concerning these Reports (**ECF No. 207**) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Defendants' request to exclude evidence of the Settlement Agreement between the DOJ and City is **GRANTED**.

   b. Defendants' motion is otherwise **DENIED** as to Phase 2 of the trial.

10. Defendants' Motion in Limine No. VII: Motion to Preclude Plaintiff's Treating Physicians from Giving Opinion Testimony (**ECF No. 208**) is **MOOT**.


_____

**UNITED STATES DISTRICT JUDGE**